**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.
                               Civ. No. 16-606 MCA/KK
                               (Cr. No. 07-2236 MCA)

VICENTE A. MONTES,

      Defendant/Movant.

**MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendant/Movant Vicente A. Montes' ("Defendant") Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) ("Section 2255 Motion"), filed June 20, 2016.[1] Plaintiff/Respondent the United States of America ("the Government") responded in opposition to the motion on October 13, 2016, and Defendant filed a reply in support of it on November 9, 2016. (Docs. 13, 16.) Chief United States District Judge M. Christina Armijo referred this matter to me for proposed findings and a recommended disposition on May 10, 2017. (Doc. 18.)

In June of 2009, Defendant pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (CR Docs. 2, 83, 84.) The Court determined that Defendant had previously been convicted of three violent felonies, and therefore imposed an enhanced sentence of 188 months' imprisonment pursuant to the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e)(1). (CR Docs. 88, 89.) In his Section 2255

---

[1] Defendant filed his Section 2255 Motion as an "emergency" motion because he claimed that the motion, if granted, would result in his release on or about September 2, 2016. (Doc. 1 at 1.) However, Defendant later filed a notice indicating that, in December 2015, he pled guilty to attempting to obtain a prohibited object in prison in violation of 18 U.S.C. § 1791, for which, in February 2016, he was sentenced to thirty months' imprisonment, to run consecutively with the sentence he challenges here. (Doc. 8 at 1; Doc. 8-1 at 1, 4.) As such, Defendant concedes that his Section 2255 Motion "is no longer of an emergency nature." (Doc. 16 at 1 n.1.)

Motion, Defendant claims that the Court should reduce his sentence because two of the prior convictions on which the Court relied—*i.e.*, his New Mexico convictions for armed robbery and voluntary manslaughter—no longer qualify as convictions for violent felonies under the ACCA in light of the United States Supreme Court's decision in *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015).[2]  (Docs. 1, 16.)  The Government opposes Defendant's motion, arguing that armed robbery and voluntary manslaughter remain violent felonies under the ACCA despite the *Samuel Johnson* decision.  (Doc. 13.)

The Court has meticulously reviewed the pleadings and attachments in this civil proceeding and in the underlying criminal case, Cr. No. 07-2236 MCA.  The Court has also examined the Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("USPO") in Cr. No. 07-2236 MCA.[3]  Because Defendant's Section 2255 Motion raises purely legal issues, an evidentiary hearing is unnecessary.  28 U.S.C. § 2255(b).  Having carefully considered the parties' submissions, the civil and criminal record, and the relevant law, the Court recommends that Defendant's Section 2255 Motion be DENIED, and that his claims be DISMISSED WITH PREJUDICE.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 6, 2007, the Government charged Defendant by indictment with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  (CR Doc. 2.)  Defendant was initially represented by then-Assistant

---

[2] The Court will refer to *Johnson v. United States*, — U.S. —, 135 S. Ct. 2551 (2015), as "*Samuel Johnson*," to distinguish it from *Johnson v. United States*, 559 U.S. 133 (2010), which the Court will refer to as "*Curtis Johnson*." Some courts refer to these cases as "*Johnson II*" and "*Johnson I*," respectively; however, these captions could suggest that the two decisions arise out of the same litigation or concern the same defendant, which they do not.

[3] In this District, presentence investigation reports, though disclosed to the parties, are not generally filed of record in criminal cases.  Here, the Court adopted the PSR's findings without objection in Cr. No. 07-2236 MCA, (CR Doc. 88 at 1), and both parties relied on it in their briefs in this Section 2255 proceeding.  (Docs. 1, 13, 16.)

Federal Public Defender Phillip Medrano, but subsequently retained attorneys Robert Gorence and Louren Oliveros to represent him. (CR Docs. 9, 18-21.) On December 21, 2007, the Court ordered Defendant to be detained pending trial. (CR Doc. 10.) Defendant filed a motion to suppress the evidence against him on September 26, 2008. (CR Doc. 37.) The Court held a two-day evidentiary hearing on the motion, and subsequently issued a memorandum opinion and order denying it. (CR Docs. 51, 54, 64, 65, 67, 100.)

On June 23, 2009, Defendant pled guilty to the indictment pursuant to a conditional plea agreement, in which he reserved the right to appeal the Court's denial of his motion to suppress. (CR Docs. 83, 84.) In the plea agreement, Defendant acknowledged his understanding that the maximum penalty the Court could impose was

> imprisonment for a period of not more than ten (10) years; however, the defendant may be an armed career criminal which carries a minimum sentence of fifteen (15) years['] imprisonment.

(CR Doc. 83 at 2.)

In the PSR, which was disclosed on July 29, 2009, the USPO found that Defendant's sentence should be enhanced under the ACCA because he had at least three qualifying prior convictions. (PSR at 2 & ¶ 22.) The PSR identified the qualifying prior convictions as: (1) attempt to commit a felony (armed robbery), aggravated battery (deadly weapon), and aggravated assault (deadly weapon), in Case No. D-202-CR-1996-02274; (2) armed robbery (firearm enhancement), in Case No. D-1226-CR-1996-00142; and, (3) voluntary manslaughter and conspiracy to commit murder in Case No. D-202-CR-1996-03913, all under New Mexico law. (*Id.* ¶¶ 22, 27-29.) The PSR indicated that Case No. D-202-CR-1996-02274 and Case No. D-202-CR-1996-03913 each involved multiple convictions arising out of the same incident. (*Id.*

¶¶ 27-29.)  Thus, under the ACCA, the USPO could only have relied on one conviction from each of these cases to justify the enhancement of Defendant's sentence.  18 U.S.C. § 924(e)(1).

At a hearing on October 14, 2009, the Court adopted the findings in the PSR without objection, enhanced Defendant's sentence under the ACCA, and sentenced Defendant to 188 months' imprisonment.  (CR Doc. 88.)  The Court entered a judgment of conviction against Defendant on the same date.  (CR Doc. 89.)  Defendant timely appealed the Court's denial of his motion to suppress, and the United States Court of Appeals for the Tenth Circuit affirmed the denial on October 29, 2010.  (CR Doc. 106.)  Defendant has been in federal custody since December of 2007.  (PSR at 1.)

On December 2, 2013, Defendant filed his first Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (CR Doc. 108), which the Court denied on January 14, 2014.  (CR Doc. 110.)  On July 7, 2014, the Tenth Circuit issued an Order Denying Certificate of Appealability regarding this motion.  (CR Doc. 120.)

Defendant filed the Section 2255 Motion presently before the Court on June 20, 2016, less than one year after the Supreme Court struck down a portion of the ACCA in *Samuel Johnson*, 135 S. Ct. at 2551.  (Doc. 1.)  On June 28, 2016, the Tenth Circuit Court of Appeals granted him leave to file a second or successive motion under 28 U.S.C. § 2255.  (CR Doc. 126.)  The Government responded in opposition to the Section 2255 Motion on October 13, 2016, and Defendant filed a reply in support of it on November 9, 2016.  (Docs. 13, 16.)  In his motion, Defendant asks the Court to reduce his sentence from 188 months' to no more than ten years' imprisonment, *i.e.*, the maximum sentence he faced without enhancement under the ACCA.  (Doc. 1 at 1.)  In support of this request, Defendant argues that the enhancement of his sentence was unconstitutional, because:  (1) the Court necessarily relied on the ACCA's "residual clause"

to find that his prior armed robbery and voluntary manslaughter convictions were for violent felonies under the Act; and, (2) the *Samuel Johnson* decision struck down the residual clause as unconstitutionally vague.[4]  (Doc. 1 at 6-23; Doc. 16 at 4-15.)  In its response in opposition to Defendant's motion, the Government contends that the enhancement of Defendant's sentence was proper because New Mexico armed robbery and voluntary manslaughter qualify as violent felonies under the ACCA's "elements clause," which *Samuel Johnson* left intact.[5]  (Doc. 13 at 3-10.)  Defendant's Section 2255 Motion is now before the undersigned for proposed findings and a recommended disposition.

II.  **ANALYSIS**

A.  ***New Mexico armed robbery with firearm enhancement is a violent felony under the ACCA's elements clause.***

The ACCA provides that a person who violates 18 U.S.C. § 922(g) and has three prior convictions for a "violent felony" or "serious drug offense" is subject to a minimum term of fifteen years' imprisonment.  18 U.S.C. § 924(e)(1).  Under the ACCA, the term "violent felony" means

any crime punishable by imprisonment for a term exceeding one year . . . that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[4] Defendant also claims that "[c]onspiracy can never constitute a violent felony under the ACCA," presumably referring to his prior conviction for conspiracy to commit murder.  (Doc. 1 at 4, 23 (citing *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007) and *United States v. Gonzalez-Ruiz*, 794 F.3d 832 (7th Cir. 2015).)  The Government did not address this claim in its response.  (*See generally* Doc. 13.)  As discussed herein, the Court proposes to find that Defendant still has three qualifying convictions under the ACCA post-*Samuel Johnson*, *i.e.*, his convictions for armed robbery with firearm enhancement and voluntary manslaughter, as well as the aggravated battery conviction he has not challenged.  Thus, at this time the Court need not address whether his conspiracy conviction would also justify the enhancement of his sentence.

[5] The Government also argues that New Mexico aggravated battery is a violent felony under the ACCA's elements clause.  (Doc. 13 at 10-16.)  Because Defendant has never claimed that this offense fails to qualify as a violent felony, (*see generally* Docs. 1, 16), the Court need not consider the Government's arguments on this point.

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added). Subpart (i) of this definition is known as the "elements clause"; the non-italicized portion of subpart (ii) is known as the "enumerated offenses clause"; and, the italicized portion of subpart (ii) is known as the "residual clause." *Samuel Johnson*, 135 S. Ct. at 2556; *United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017). In *Samuel Johnson*, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague, but left its elements and enumerated offenses clauses intact.[6] 135 S. Ct. at 2557, 2563. Armed robbery is not listed in the ACCA's enumerated offenses clause. 18 U.S.C. § 924(e)(2)(B)(ii). Thus, to constitute a violent felony under the ACCA after *Samuel Johnson*, New Mexico armed robbery with firearm enhancement must satisfy the elements clause.

To determine whether an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of the ACCA's elements clause, courts must generally apply the "categorical approach," which requires that they consider only the offense's statutory elements, and not the actual facts underlying the defendant's prior conviction. *Harris*, 844 F.3d at 1263; *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016); *United States v. Smith*, 652 F.3d 1244, 1246 (10th Cir. 2011). Courts must presume that a prior conviction "rested upon nothing more than the least of the acts criminalized" by the state statute. *Moncrieffe v. Holder*, — U.S. —, 133 S. Ct. 1678, 1684 (2013) (internal punctuation marks omitted). However, "in construing the minimum culpable conduct, such conduct only

---

[6] In *Welch v. United States*, the Supreme Court held that *Samuel Johnson* announced a new substantive rule that applies retroactively on collateral review. — U.S. —, 136 S. Ct. 1257, 1264-65 (2016). Defendant may therefore challenge the enhancement of his sentence pursuant to the ACCA's residual clause by way of a motion under 28 U.S.C. § 2255.

includes that in which there is a realistic probability, not a theoretical possibility the state statute would apply." *Harris*, 844 F.3d at 1264 (quoting *Moncrieffe*, 133 S. Ct. at 1685). Thus,

> [t]o satisfy th[e] categorical approach, it is not necessary that every conceivable factual offense covered by a statute fall within the ACCA. Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, qualifies under the ACCA as a violent felony.

*Smith*, 652 F.3d at 1246 (citation omitted). To identify the least culpable conduct a state statute criminalizes in the ordinary case, courts look to "[d]ecisions from the state supreme court . . . supplemented by decisions from the intermediate-appellate courts." *Harris*, 844 F.3d at 1264.

In *Curtis Johnson*, the Supreme Court held that the term "physical force" as used in the ACCA's elements clause means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140 (emphasis in original); *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010). The Supreme Court therefore concluded that the force element of Florida battery, which can be satisfied by "the most nominal contact, such as a tap on the shoulder without consent," did not categorically rise to the level of physical force under the ACCA. *Curtis Johnson*, 559 U.S. at 138-40 (internal punctuation marks and citation omitted). According to *Curtis Johnson*, such force consists of something more than mere offensive touching, although it "might consist" of no more than "a slap in the face, for example."[7] *Id.* at 143; *Harris*, 844 F.3d at 1265.

To decide whether New Mexico armed robbery with firearm enhancement is a violent felony under the ACCA's elements clause, then, this Court must look to state law to determine

---

[7] In *United States v. Castleman*, the Supreme Court left unresolved whether acts such as "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" rise to the level of "violent force, under [*Curtis*] *Johnson*'s definition of that phrase." — U.S. —, 134 S. Ct. 1405, 1411-12, 1414 (2014); *but see id.* at 1421-22 (Scalia, J., concurring) ("[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling" bear no "real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury" within the meaning of *Curtis Johnson*), *and Harris*, 844 F.3d at 1265 n.1 (*Castleman* did not categorize "pushing, grabbing, shoving, slapping, and hitting" as non-violent force under *Curtis Johnson*).

whether the minimum culpable conduct allowing for a conviction in the ordinary case necessarily includes the use of "physical force" as *Curtis Johnson* defined it. In other words, do the elements of the offense categorically require the actual, threatened, or attempted use of force capable of causing physical pain or injury to another person?

New Mexico's robbery statute provides that

[r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.[8]

Whoever commits robbery is guilty of a third degree felony.

Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M. Stat. Ann. § 30-16-2.

This statutory language shows that armed robbery is not a distinct offense from robbery; the offense is robbery whether or not armed, and whether or not one is an accessory. "Armed robbery" is a way to commit "robbery" and, if done in that way, the penalty is greater but the basic offense remains robbery.

*New Mexico v. Roque*, 1977-NMCA-094, ¶ 8, 91 N.M. 7, 569 P.2d 417. Thus, to determine whether armed robbery is a violent felony under the ACCA, the Court must analyze the elements of robbery, plus the additional element of commission of the offense "while armed with a deadly weapon."[9] N.M. Stat. Ann. § 30-16-2.

---

[8] "[T]he words 'or violence'" in Section 30-16-2 "refer to the unwarranted exercise of force and do not substantively state an alternative means of committing the offense." *New Mexico v. Curley*, 1997-NMCA-038, ¶ 4, 123 N.M. 295, 939 P.2d 1103; *see also New Mexico v. Fuentes*, 1994-NMCA-158, ¶ 14, 119 N.M. 104, 888 P.2d 986 (terms "force" and "violence" are used synonymously in New Mexico robbery statute).

[9] Although armed robbery is an aggravated form of robbery, robbery and armed robbery are two distinct offenses for purposes of determining whether they are violent felonies under the ACCA, because they carry different punishments. *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243, 2256 (2016). Here, the parties agree that Defendant was convicted of armed robbery. (Doc. 1 at 4; Doc. 13 at 3.)

In addition, Defendant's armed robbery conviction included a firearm enhancement pursuant to Section 31-18-16 of the New Mexico Statutes Annotated. (PSR ¶ 28.) Section 31-18-16 provides that

> [w]hen a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment . . . shall be increased by one year [for a first offense and] by three years [for a second or subsequent offense]. . . . If the case is tried before a jury and if a prima facie case has been established showing that a firearm was used in the commission of the offense, the court shall submit the issue to the jury by special interrogatory. If the case is tried by the court and if a prima facie case has been established showing that a firearm was used in the commission of the offense, the court shall decide the issue and shall make a separate finding of fact thereon.

N.M. Stat. Ann. § 31-18-16; *see also* N.M. U.J.I. 14-6013 (for firearm enhancement to apply, state must prove beyond reasonable doubt that crime was committed "with the use of a firearm"). That Defendant committed armed robbery with the use of a firearm was thus a fact, other than the fact of a prior conviction, that increased the penalty for his offense beyond the prescribed statutory maximum, and was constitutionally required to be charged, submitted to the jury, and proven beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 494-95 (2000).[10] Whether it is characterized as an "element" or a "sentencing factor" does not matter. *Id.* at 494. If, as here, "statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis*, 136 S. Ct. at 2256.

---

[10] In *New Mexico v. Badoni*, 2003-NMCA-009, 133 N.M. 257, 62 P.3d 348, the New Mexico Court of Appeals held that the prosecution was not required to formally charge the defendant with a firearm enhancement under Section 31-18-16 where the enhancement was "premised upon a circumstance which itself was an element of the [underlying] offense or a fact upon which such an element was established." *Id.* at ¶¶ 17, 19 (emphasis omitted); *cf. New Mexico v. Barreras*, 1975-NMCA-063, ¶ 7, 88 N.M. 52, 536 P.2d 1108 ("[A] defendant must be given notice, in the criminal charge, that he used a firearm in committing the crime" but not "of the enhanced penalty for using a firearm."). In Defendant's case, however, the prosecution complied with the clear dictates of *Apprendi*, and specifically listed the firearm enhancement in the information by which Defendant was charged. *See New Mexico v. Montes*, D-1226-CR-1996-00142, Criminal Information (12th Jud. Dist. Ct. filed Dec. 30, 1996), attached as Exhibit A; *see also New Mexico v. Montes*, D-1226-CR-1996-00142, Plea and Disposition Agreement (12th Jud. Dist. Ct. filed Feb. 20, 1998), attached as Exhibit B; *New Mexico v. Montes*, D-1226-CR-1996-00142, Judgment and Sentence (12th Jud. Dist. Ct. filed Feb. 20, 1998), attached as Exhibit C; *New Mexico v. Montes*, D-1226-CR-1996-00142, Amended Judgment and Sentence (12th Jud. Dist. Ct. filed Dec. 21, 2000), attached as Exhibit D.

Had Defendant been convicted of armed robbery *without* the firearm enhancement, the Court would have proposed to find that his offense of conviction no longer qualifies as a violent felony under the ACCA. *See United States v. King*, 2016 WL 8809051 (D.N.M. Dec. 1, 2016), *supplemented by United States v. King*, 2017 WL 1506765 (D.N.M. Feb. 17, 2017), *adopted by United States v. King*, — F. Supp. 3d —, 2017 WL 1506766 (D.N.M. Mar. 31, 2017). However, as further explained below, with the firearm enhancement's added requirement of use of a firearm in the commission of the offense, the Court proposes to find that New Mexico armed robbery categorically requires the actual, threatened, or attempted use of *Curtis Johnson* physical force, and therefore remains a violent felony under the ACCA.

New Mexico robbery must always be committed by the use of some degree of "force," or by "intimidation," that is, by the "threatened use of force." N.M. Stat. Ann. § 30-16-2; *New Mexico v. Bernal*, 2006-NMSC-50, ¶ 28, 140 N.M. 644, 146 P.3d 289. Indeed, "[t]he gist of the offense of robbery is the use of force or intimidation." *Id.; see Fuentes*, 1994-NMCA-158 at ¶ 12, 119 N.M. 104, 888 P.2d 986 ("[R]obbery can be presented under alternative theories: (1) robbery by threat of force; (2) robbery by use of force; (3) armed robbery by threat of force; or (4) armed robbery by use of force."). To support a robbery conviction, "[t]he use or threatened use of force must be the lever by which the thing of value is separated from the victim." *New Mexico v. Martinez,* 1973-NMCA-120, ¶ 4, 85 N.M. 468, 513 P.2d 402 (internal ellipses and citation omitted).

"Where [robbery by] force is charged, the issue is not how much force was used, but whether the force was sufficient to compel the victim to part with his property." *New Mexico v. Sanchez*, 1967-NMCA-009, ¶ 11, 78 N.M. 284, 430 P.2d 781. The New Mexico Court of Appeals elaborated on this point in *Curley*, holding that the force element of robbery is satisfied

when the defendant removes property from the victim with sufficient force to overcome some type of resistance, including "the resistance of attachment." *Curley*, 1997-NMCA-038 at ¶¶ 4, 7, 10, 123 N.M. 295, 939 P.2d 1103. "In our cases where we have not found sufficient force to be involved, the victim did not resist the property being taken from his person." *Id.* at ¶ 7 (emphasis added). Similarly, where the threatened use of force is charged, the threat must be "such as to cause a reasonable man to apprehend danger and that he could be reasonably expected to give up his property in order to protect himself." *Sanchez*, 1967-NMCA-009 at ¶ 12, 78 N.M. 284, 430 P.2d 781.

As discussed in *King*, New Mexico simple robbery does not categorically require the use of *Curtis Johnson* physical force, because where the victim's resistance is minimal, the defendant's use of force to overcome it may also be minimal, as illustrated by New Mexico's line of purse-snatching robbery cases. — F. Supp. 3d —, 2017 WL 1506766 at *5-*10; *see also United States v. Nicholas*, — F. App'x —, 2017 WL 1429788, at *3-*5 (10th Cir. Apr. 24, 2017) (Kansas robbery does not categorically require use of *Curtis Johnson* physical force where snatching purse from victim's arm is sufficient to satisfy force element of offense).[11] Further, New Mexico armed robbery, absent a firearm enhancement, requires only that the defendant be "armed with" a deadly weapon but not necessarily that he "use" it, and so fails to elevate the offense's force element to the level of *Curtis Johnson* physical force.[12] *King*, — F. Supp. 3d —, 2017 WL 1506766 at *11-*15.

---

[11] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

[12] The New Mexico Court of Appeals recently equated the terms "armed with a gun" and "use of a firearm" in the context of armed robbery with firearm enhancement in *New Mexico v. Cordova*, an unpublished opinion. 2017 WL 1381935, ¶¶ 2-3 (N.M. Ct. App. Mar. 14, 2017). However, in *Cordova*, the court gave no indication that any party had asked it to reconsider the published New Mexico cases indicating that the two terms are distinct, nor did the court do so on its own initiative. *See generally id.* In general, cases are not authority for propositions not

Here, however, Defendant was convicted of the use of a firearm in the commission of an armed robbery pursuant to Section 31-18-16. (PSR ¶ 28); N.M. Stat. Ann. § 31-18-16. In *New Mexico v. Trujillo*, 1978-NMCA-041, 91 N.M. 641, 578 P.2d 342, the court explained that "'[u]se' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to "apply to advantage."' *Id.* at ¶ 12. The *Trujillo* court gave the following examples of "use" of a firearm:

> The intentional firing of the gun is use of the firearm. The display of the gun in a menacing manner as a means of accomplishing a robbery or the employment of the gun to strike or "pistol whip" the victim is certainly "use" of the gun in the commonly accepted definition of that term.

*Id.* at ¶ 13 (internal punctuation marks and citation omitted). Accordingly, the *Trujillo* court held that the defendant in that case used a firearm within the meaning of the firearm enhancement statute "when he used [a] shotgun as a club in committing aggravated battery." *Id.* at ¶ 14.

The New Mexico Court of Appeals defined the outer limits of "use" of a firearm in *New Mexico v. Chouinard*, 1979-NMCA-145, 93 N.M. 634, 603 P.2d 744.

> While this court has previously held that the idea of "use" in this statute should be construed broadly to include the use of a gun as a club, we do not stretch the meaning of "use" to include "non-use." . . . . The use of a firearm is something beyond mere possession of it. . . . If the Legislature had intended the firearm enhancement provision to apply whenever a person committing a felony was armed, it would have written such a provision into the statute. Compare the New Mexico armed robbery statute, s 30-16-2, N.M.S.A. (1978) (applicable to anyone who "commits robbery while armed with a deadly weapon").

---

considered. *New Mexico v. Lucero*, 2017-NMSC-008, ¶ 31, — N.M. —, 389 P.3d 1039. Moreover, the *Cordova* court equated these two terms in the context of a double jeopardy analysis, in which the court compared armed robbery and the firearm enhancement based on the prosecution's "theory of the crime" in the case at issue, which in *Cordova* involved the use of a firearm. *New Mexico v. Gutierrez*, 2011-NMSC-024, ¶¶ 57-59, 150 N.M. 232, 258 P.3d 1024. The categorical approach applicable here, in contrast, is concerned solely with the elements of these crimes in the abstract. *Moncrieffe*, 133 S. Ct. at 1684; *Harris*, 844 F.3d at 1263.

*Id.* at ¶¶ 5-6 (internal citations omitted); *see also Trujillo*, 1978-NMCA-041 at ¶ 14, 91 N.M. 641, 578 P.2d 342 ("Similarly to the California courts, we have distinguished between armed with a firearm and use of a firearm.").

The foregoing authority demonstrates that, to support a conviction for armed robbery with firearm enhancement, the state must prove that a defendant used or threatened to use physical force to overcome a victim's resistance to the defendant's taking of her property from her person or immediate control by means of a firearm. *Curley*, 1997-NMCA-038 at ¶¶ 4, 7, 10, 123 N.M. 295, 939 P.2d 1103; *Trujillo*, 1978-NMCA-041 at ¶ 12, 91 N.M. 641, 578 P.2d 342. The Court proposes to find that such conduct always entails the use or threatened use of force capable of causing physical pain or injury to another. *Curtis Johnson*, 559 U.S. at 140. Even if a defendant merely displays a firearm in a menacing manner, rather than firing at or striking the victim with it,

> [t]hreatening or engaging in menacing conduct toward a victim, with a weapon capable of producing death or great bodily harm, threatens the use of '*violent* force' because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future.

*Ramon Silva*, 608 F.3d at 670 (emphasis in original); *see also United States v. Maldonado-Palma*, 839 F.3d 1244, 1250 (10th Cir. 2016) ("Employing a weapon that is capable of producing death or great bodily harm or inflicting dangerous wounds in an assault necessarily threatens the use of physical force, *i.e.*, 'force capable of causing physical pain or injury to another person.'").

The Court's proposed finding is consistent with federal appellate decisions holding that armed robbery is a violent felony under the ACCA's elements clause where the actual or threatened use of a dangerous or deadly weapon during the robbery is an element of the offense. *See, e.g., United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016) (Maryland armed robbery

is a violent felony under ACCA's elements clause; offense has as an element "use of a dangerous or deadly weapon"); *United States v. Smith*, 638 F. App'x 216, 219 (4th Cir. 2016) (North Carolina armed robbery is a violent felony under ACCA's elements clause; offense has as an element "use or threatened use" of dangerous weapon); *United States v. Johnson*, 530 F. App'x 528, 531-33 (6th Cir. 2013) (Tennessee armed robbery is a violent felony under ACCA's elements clause; offense has as an element use of or threat to use deadly weapon). As the *Redrick* court explained, the

> element of "use" of a dangerous or deadly weapon supplies at minimum a "threat" of physical force against the person of another. And because the means employed is a "dangerous or deadly weapon," the required degree of force—that is, "*violent force*"—is present.

841 F.3d at 484; *cf. United States v. Parnell*, 818 F.3d 974, 979-80 (9th Cir. 2016) (Massachusetts armed robbery is not a violent felony under ACCA's elements clause where defendant "must possess a dangerous weapon" during the robbery but need not "generally or openly display[]" or otherwise use it). For all of the above reasons, the Court proposes to find that New Mexico armed robbery with firearm enhancement is a violent felony under the ACCA's elements clause, and recommends that Defendant's claim to the contrary be dismissed with prejudice.

**B.** ***New Mexico voluntary manslaughter is a violent felony under the ACCA's elements clause.***

Like armed robbery, voluntary manslaughter is not listed in the ACCA's enumerated offenses clause, and can no longer qualify as a violent felony under the Act's residual clause. 18 U.S.C. § 924(e)(2)(B)(ii); *Samuel Johnson*, 135 S. Ct. at 2557, 2563. Thus, to constitute a violent felony under the ACCA, New Mexico voluntary manslaughter must categorically have

"as an element the use, attempted use, or threatened use of physical force against the person of

another" within the meaning of the ACCA's elements clause.  18 U.S.C. § 924(e)(2)(B)(i).

Under New Mexico law,

[m]anslaughter is the unlawful killing of a human being without malice.

A.  Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.  Whoever commits voluntary manslaughter is guilty of a third degree felony resulting in the death of a human being.

B.  Involuntary manslaughter consists of manslaughter committed in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection.  Whoever commits involuntary manslaughter is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-2-3.[13]

"[V]oluntary manslaughter is second-degree murder committed with sufficient

provocation."  *New Mexico v. Jernigan*, 2006-NMSC-003, ¶ 18, 139 N.M. 1, 127 P.3d 537.

"The difference between second degree murder and voluntary manslaughter is that voluntary

manslaughter requires sufficient provocation.  Otherwise, the elements for both offenses are the

same."  *New Mexico v. Gaitan*, 2001-NMCA-004, ¶ 11, 130 N.M. 103, 18 P.3d 1056; *see also*

N.M. U.J.I. 14-220 ("The difference between second degree murder and voluntary manslaughter

is sufficient provocation. . . .  Sufficient provocation reduces second degree murder to voluntary

manslaughter.").

To convict of voluntary manslaughter, the jury must have evidence that there was a sudden quarrel [or] heat of passion at the time of the commission of the crime, to show that the killing was the result of provocation sufficient to negate the presumption of malice.

*New Mexico v. Reynolds*, 1982-NMSC-091, ¶ 8, 98 N.M. 527, 650 P.2d 811.

---

[13] Voluntary manslaughter and involuntary manslaughter not only have significantly different elements, but also carry different punishments, and as such are two distinct offenses for purposes of determining whether they are violent felonies under the ACCA.  *Mathis*, 136 S. Ct. at 2256.  In the present matter, the parties agree that Defendant's prior conviction was for voluntary manslaughter.  (Doc. 13 at 7-8; Doc. 16 at 9 n.4.)

Like second degree murder, voluntary manslaughter is at a minimum a general intent crime, though it may also be committed with specific intent. *Jernigan*, 2006-NMSC-003 at ¶ 18, 139 N.M. 1, 127 P.3d 537; *New Mexico v. Campos*, 1996-NMSC-043, ¶ 38, 122 N.M. 148, 921 P.2d 1266. "A general intent crime . . . requires . . . a conscious wrongdoing, or the purposeful doing of an act that the law declares to be a crime." *New Mexico v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.3d 69 (internal quotation marks omitted), *not followed as dicta on other grounds by New Mexico v. Suazo*, 2017-NMSC-011, ¶¶ 17-23, — N.M. —, 390 P.3d 674. In addition, second degree murder and voluntary manslaughter have a knowledge requirement, *i.e.*, the defendant must actually know that his acts create a strong probability of death or great bodily harm. *Suazo*, 2017-NMSC-011 at ¶ 16, — N.M. —, 390 P.3d 674. Consequently, "[a] negligent or accidental killing could not satisfy the elements of second-degree murder" or voluntary manslaughter. *Id.* at ¶ 23. Moreover, although the New Mexico courts have sometimes used the word "reckless" to describe the *mens rea* of second degree murder and voluntary manslaughter, they do so to describe the defendant's state of mind regarding the *result* of his actions, *i.e.*, the victim's death, and not his state of mind with respect to the actions themselves. *See, e.g.*, *New Mexico v. Carrasco*, 2007-NMCA-152, ¶ 7, 143 N.M. 62, 172 P.3d 611.

Accordingly, New Mexico's Uniform Jury Instructions identify the following elements of voluntary manslaughter:

1. The defendant killed _____ (*name of victim*);

2. The defendant knew that his acts created a strong probability of death or great bodily harm to [him] _____ (*name of victim*) [or any other human being];

3. The defendant acted as a result of sufficient provocation;

4. This happened in New Mexico on or about the ___ day of _____, _____.

N.M. U.J.I. 14-221.  Sufficient provocation is defined as

> [a]ny action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions.  The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.  The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

N.M. U.J.I. 14-222.

In addition, the relevant Use Notes indicate that Instruction 14-141 regarding general criminal intent must be given when voluntary manslaughter is charged.  N.M. U.J.I. 14-210, Use Note 4; N.M. U.J.I. 14-221, Use Note 6.  That instruction states:

> [i]n addition to the other elements of _____ (*identify crime or crimes*), the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime.  A person acts intentionally when he purposely does an act which the law declares to be a crime[, even though he may not know that his act is unlawful].  Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, [and] his conduct [and any statements made by him].

N.M. U.J.I. 14-141.

In light of the authority just described, the Court proposes to find that New Mexico voluntary manslaughter remains a violent felony under the ACCA post-*Samuel Johnson*.  To be convicted of voluntary manslaughter in New Mexico, a defendant must engage in intentional acts by which he kills a human being, knowing that his acts create a strong probability of death or great bodily harm, on a sudden quarrel or in the heat of passion with sufficient provocation.  N.M. Stat. Ann. § 30-2-3; *Reynolds*, 1982-NMSC-091 at ¶ 8, 98 N.M. 527, 650 P.2d 811; N.M. U.J.I. 14-141; N.M. U.J.I. 14-221; N.M. U.J.I. 14-222.  In the Court's view, to satisfy these elements, a defendant must necessarily "use physical force" within the meaning of the ACCA's elements clause.

> [P]roof that a person caused the death of another human being under circumstances which would otherwise be murder [absent serious provocation] necessarily requires proof that the individual used force capable of causing physical pain or injury.

*United States v. Jackson*, 655 F. App'x 290, 292-93 (6th Cir. 2016) (internal citations and punctuation marks omitted).

Defendant asserts two arguments in opposition to this conclusion. First, Defendant contends that New Mexico voluntary manslaughter does not require the use of "physical" force because it is possible to kill someone without directly applying force to his body, for example, by poisoning him. (Doc. 1 at 20-21; Doc. 16 at 10-13); *cf. Curtis Johnson*, 559 U.S. at 138 ("The adjective 'physical' . . . refers to force exerted by and through concrete bodies," as distinct from "intellectual force or emotional force."). The Supreme Court rejected a functionally identical argument in *Castleman*:

> [The defendant] errs in arguing that although poison may have forceful physical properties as a matter of organic chemistry, no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink. The "use of force" in [the defendant's] example is not the act of "sprink[ling]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [the defendant's] logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

134 S. Ct. at 1415 (internal citations and quotation marks omitted). In *Castleman*, the Supreme Court was called upon to decide whether the Tennessee crime of assault against a family or household member had as an element the use or attempted use of "physical force," and therefore qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922. *Id.* at 1409. Thus, the decision does not directly address whether an offense has as an element the actual,

attempted, or threatened use of "physical force" within the meaning of the ACCA's elements clause.  However, its reasoning applies with equal force in this context.

In his reply, Defendant tacitly concedes that *Castleman*'s reasoning may foreclose his argument as it applies to killings by means of "physical acts" of "indirect force."  (Doc. 16 at 10); *but compare United States v. Armijo*, 651 F.3d 1226, 1233 (10th Cir. 2011) ("[S]urreptitious drugging of a victim does not involve the use of physical force.") *with De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011) (use of deceit to induce victim to take drug is "a fraud on his will equivalent to force") (citation omitted).  However, Defendant maintains that New Mexico's voluntary manslaughter statute "allows for other possibilities," specifically, killings by means of "emotional or psychological manipulation, guile, or deception."  (*Id.* at 11 (citing *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005).)

In so arguing, Defendant overlooks the significance of the requirement that voluntary manslaughter be committed "upon a sudden quarrel or in the heat of passion" and "as a result of sufficient provocation."  N.M. Stat. Ann. § 30-2-3; N.M. U.J.I. 14-221.  In theory, it may be possible to invent a scenario in which a defendant uses emotional manipulation, guile, or trickery to kill someone without engaging in any physical acts, even though the defendant is in the throes of an "extreme emotion[]" that "affect[s his] ability to reason" and from which "an ordinary person would [not] have cooled off before acting."  N.M. U.J.I. 14-222.  However, in the Court's view, this is at most a remote theoretical possibility, not a realistic probability.  *See Harris*, 844 F.3d at 1264 (quoting *Moncrieffe*, 133 S. Ct. at 1685) ("[I]n construing the minimum culpable conduct, such conduct only includes that in which there is a realistic probability, not a theoretical possibility the state statute would apply.").  Realistically, a person in the grip of an emotion so extreme that it impairs his ability to reason and causes him to lose self-control will not devise

and execute the kind of plan that would be necessary to kill someone solely by means of intellectual or emotional force. Certainly, Defendant has cited to no New Mexico case involving such a scenario.

Defendant's reliance on *Massachusetts v. Carter*, 52 N.E.3d 1054 (Mass. 2016), does not alter the Court's conclusion on this point. In *Carter*, the Supreme Judicial Court of Massachusetts held that a juvenile could be charged with Massachusetts involuntary manslaughter where the prosecution alleged that she engaged in a months-long "systematic campaign" of verbal "coercion" that caused the victim to commit suicide. *Id.* at 1057-59, 1064. *Carter* is clearly inapposite. Most obviously, it addressed Massachusetts involuntary manslaughter, not New Mexico voluntary manslaughter. As a Massachusetts court's interpretation of a Massachusetts crime with elements quite distinct from New Mexico voluntary manslaughter, *see id.* at 1060 & n.9, *Carter* sheds no light on what conduct would support a voluntary manslaughter conviction in New Mexico.

Further, a defendant like the juvenile in *Carter*, who did not actively participate in an overt act directly causing the victim's suicide, could not properly be convicted of second degree murder in New Mexico. *See New Mexico v. Sexson*, 1994-NMCA-004, ¶¶ 10, 17, 117 N.M. 113, 869 P.2d 301 ("[T]he difference between murder and aiding suicide [under N.M. Stat. Ann. § 30-2-4] generally hinges upon whether the defendant *actively* participates in the overt act directly causing death, or whether he merely provides the means of committing suicide.") (emphasis in original).[14] Finally, the *Carter* scenario clearly does not involve a killing on a sudden quarrel or in the heat of passion as a result of sufficient provocation. The juvenile in *Carter*, even if she had initially been adequately provoked, could not have committed the extensive emotional

---

[14] "Assisting suicide consists of deliberately aiding another in the taking of his own life. Whoever commits assisting suicide is guilty of a fourth degree felony." N.M. Stat. Ann. § 30-2-4.

manipulation alleged in that case before "an ordinary person would have cooled off."  N.M.

U.J.I. 14-222.  In short, there is virtually no probability that the facts in *Carter* would support a

voluntary manslaughter conviction in New Mexico.  *Harris*, 844 F.3d at 1264; *Moncrieffe*, 133

S. Ct. at 1685.

Defendant also contends that New Mexico voluntary manslaughter is not a violent felony

under the ACCA's elements clause because it requires only reckless, rather than intentional or

purposeful, conduct.  (Doc. 1 at 21-23; Doc. 16 at 13-15.)  In so arguing, Defendant relies on

*Armijo*, in which the Tenth Circuit held that Colorado manslaughter was not a crime of violence

under Section 4B1.2 of the United States Sentencing Guidelines.  651 F.3d at 1233-37; *see also*

*United States v. Rivera-Muniz*, 854 F.3d 1047, 2017 WL 1404193, at *3 (9th Cir. Apr. 20, 2017)

(California voluntary manslaughter is not a crime of violence under elements clause of U.S.S.G.

§ 2L1.2 because "California permits a conviction for voluntary manslaughter with a *mens rea* of

recklessness"); *Perez-Vargas*, 414 F.3d at 1285-87 (Colorado third degree assault, which has a

*mens rea* of recklessness or criminal negligence, is not a crime of violence under elements clause

of U.S.S.G. § 2L1.2).  As Defendant observes, the *Armijo* court held that "in interpreting the

language of, or language identical to that used in § 4B1.2(a), this court has specifically held that

only those crimes with a mens rea of intent or purpose qualify as crimes of violence."[15]  *Id.* at

1234.  More specifically, the *Armijo* court held that "only those versions of manslaughter that

involve intentional or purposeful behavior qualify as crimes of violence for purposes of §

4B1.2(a)."  *Id.* at 1237.

In so holding, the *Armijo* court relied, *inter alia*, on its earlier decision in *United States v.*

*Zuniga-Soto*, 527 F.3d 1110 (10th Cir. 2008), which in turn relied on *Leocal v. Ashcroft*, 543 U.S.

---

[15] In *Armijo*, the Tenth Circuit noted that "[t]he definition of 'violent felony' under the first-prong of the ACCA and 'crime of violence' under § 4B1.2(a) are nearly identical."  *Id.* at 1231 n.3.

1 (2004).  *Armijo*, 651 F.3d at 1234; *Zuniga-Soto*, 527 F.3d at 1123-24.  In *Leocal*, the Supreme

Court held that, to constitute a crime of violence under the elements clause of 18 U.S.C. § 16(a),

an offense must require proof of "a higher degree of intent than negligent or merely accidental

conduct."  543 U.S. at 9.  The Tenth Circuit quoted *Leocal* at some length in *Zuniga-Soto*:

> [n]oting that a crime of violence must be one that involves the "use of physical
> force," the [Supreme] Court observed that "'use' requires active employment."
> The Court explained
>
>> While one may, in theory, actively employ something in an
>> accidental manner, it is much less natural to say that a
>> person actively employs physical force against another person by
>> accident.  Thus a person would 'use physical force against' another
>> when pushing him; however, we would not ordinarily say a person
>> 'uses physical force against' another by stumbling and falling into
>> him.

527 F.3d at 1123 (emphases, internal citations, and internal punctuation marks omitted) (quoting

*Leocal*, 543 U.S. at 9).  The *Zuniga-Soto* court determined that "recklessness falls into the

category of accidental conduct that the *Leocal* Court described as failing to satisfy the use of

physical force requirement under either of § 16's definitions of 'crime of violence.'"  *Id.* at 1124.

As such, the Court agrees with Defendant that, under Tenth Circuit law, New Mexico voluntary

manslaughter must categorically require "intentional" or "purposeful" conduct to qualify as a

violent felony under the ACCA's elements clause.  *But see Voisine v. United States*, — U.S. —,

136 S. Ct. 2272, 2280 (2016) ("A person who assaults another recklessly 'use[s]' force, no less

than one who carries out that same action knowingly or intentionally," within the meaning of 18

U.S.C. § 921(a)(33)(A)).

However, the Court disagrees with Defendant's contention that New Mexico law permits

less than "intentional" conduct to support a voluntary manslaughter conviction.  The Court finds

*Ramon Silva* instructive on this point.  In *Ramon Silva*, the Tenth Circuit held that New Mexico

"apprehension causing" aggravated assault qualifies as a violent felony under the ACCA's elements clause. 608 F.3d at 672-73. In so holding, the *Ramon Silva* court rejected the defendant's argument that the offense did not satisfy the elements clause because it did not "have as an element an intent to assault, injure or frighten." *Id.* The *Ramon Silva* court concluded that the defendant had been convicted of "intentional conduct" because New Mexico "'[a]pprehension causing' aggravated assault requires proof of general criminal intent." *Id.* at 673.

> That aggravated assault does not require proof of a specific intent to assault the victim, or of a specific intent to injure or even frighten the victim, only confirms that aggravated assault is not a specific intent crime, but rather is a general intent crime.

*Id.* (internal citations and punctuation marks omitted).

As noted above, New Mexico voluntary manslaughter requires proof of at least general criminal intent. *Jernigan*, 2006-NMSC-003 at ¶ 18, 139 N.M. 1, 127 P.3d 537; *Campos*, 1996-NMSC-043 at ¶ 38, 122 N.M. 148, 921 P.2d 1266. In other words, to be convicted of New Mexico voluntary manslaughter, a defendant must intentionally engage in the acts by which he kills the victim. N.M. U.J.I. 14-141. According to *Ramon Silva*, proof of such general criminal intent is sufficient to satisfy the ACCA's elements cause; specific intent is not required. 608 F.3d at 672-73.

Justice Thomas' dissenting opinion in *Voisine*, in which Justice Sotomayor joined, provides a useful framework for understanding the *mens rea* of New Mexico voluntary manslaughter, and why the Tenth Circuit held that an equivalent *mens rea* was sufficient to satisfy the elements clause in *Ramon Silva*. According to Justice Thomas, there are

> [t]hree different types of intentional and reckless force resulting in physical injury. . . . The first category includes all cases where a person intentionally creates force and desires or knows with a practical certainty that that force will

cause harm. . . . The second category involves a person who intentionally unleashes force that recklessly causes injury. . . . Finally . . . a person could recklessly unleash force that recklessly causes injury.

136 S. Ct. at 2285-87. Justices Thomas and Sotomayor agreed with the *Voisine* majority that the first two categories should constitute the "use" of physical force within the meaning of 18 U.S.C. 921(a)(33)(A).[16] *Id.* As the majority explained,

> [d]ictionaries consistently define the noun "use" to mean the "act of employing" something. On that common understanding, the force involved in a qualifying assault must be volitional; an involuntary motion, even a powerful one, is not naturally described as an active employment of force. But the word "use" does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so. Or, otherwise said, that word is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.

*Id.* at 2278-79 (internal citations and quotations omitted). This reasoning is equally meaningful in the context of the ACCA's elements clause, which also requires the "use" of physical force. 18 U.S.C. § 924(e)(2)(B)(i).

At a minimum, New Mexico voluntary manslaughter falls into the second category Justice Thomas identified in *Voisine*, in which a defendant "*intentionally* employ[s] force, but *recklessly* cause[s] physical injury with that force."[17] *Id.* at 2286 (emphases in original). To commit voluntary manslaughter, the defendant must intentionally engage in acts that kill someone, and must do so knowing of the strong probability that his acts will in fact kill or gravely injure. According to *Ramon Silva*, and consistent with the reasoning in *Voisine*, such

---

[16] As previously noted, the majority in *Voisine* held that "[a] person who assaults another recklessly 'use[s]' force, no less than one who carries out that same action knowingly or intentionally," within the meaning of 18 U.S.C. § 921(a)(33)(A). 136 S. Ct. at 2280. The dissent disagreed that recklessly creating force that recklessly causes injury should constitute the "use" of force within the meaning of Section 921(a)(33)(A). *Id.* at 2286.

[17] Where second degree murder and voluntary manslaughter are committed with specific intent, *i.e.*, the intent to kill or gravely injure, *Jernigan*, 2006-NMSC-003 at ¶ 18, 139 N.M. 1, 127 P.3d 537, however, they fall into Justice Thomas' first category, in which "a person intentionally creates force and desires or knows with a practical certainty that that force will cause harm." 136 S. Ct. at 2285.

conduct constitutes an intentional "use" of physical force under the ACCA. *Ramon Silva*, 608 F.3d at 672-73; *Voisine*, 136 S. Ct. at 2280, 2286. For these reasons, the Court proposes to reject Defendant's arguments that New Mexico voluntary manslaughter does not require the intentional use of physical force within the meaning of the ACCA's elements clause, and to find that New Mexico voluntary manslaughter remains a violent felony under the ACCA post-*Samuel Johnson*.

## III.  CONCLUSION

The Court proposes to find that New Mexico armed robbery with firearm enhancement and New Mexico voluntary manslaughter qualify as violent felonies under the ACCA's elements clause, and thus, that the application of the ACCA to Defendant's sentence based on his prior convictions for these offenses remains proper after *Samuel Johnson*. Consequently, the undersigned recommends that the Court DENY Defendant's Section 2255 Motion and DISMISS this case WITH PREJUDICE.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---