IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff/Respondent,

vs.  Civ. No. 16-606-MCA-KK
(Cr. No. 7-2236-MCA)

VICENTE MONTES,

Defendant/Petitioner.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *Vicente Montes' Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255*, filed June 2016. [Doc. 1] On May 22, 2017 United States Magistrate Judge Kirtan Khalsa filed Proposed Findings and Recommended Disposition ("PFRD") recommending that the Court deny Mr. Montes' Motion and dismiss this case with prejudice. [Doc. 19] On June 5, 2017, Mr. Montes ("Defendant") filed *Defendant's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition* in which Defendant urged the court to not adopt the PFRD and instead to grant Defendant's Section 2255 *Motion*. [Doc. 20] Defendant's Section 2255 *Motion* and Defendant's objections are now before the Court. For the reasons that follow, the Court denies Defendant's objections and adopts the Magistrate Judge's PFRD.

1

**Standard of Review**

District courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). When resolving objections to a magistrate judge's proposal,

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

**Analysis**

Defendant raises two objections to the PFRD. First, characterizing the firearm enhancement as a "separate state sentencing enhancement" or a "separate offense" distinct from the crime of armed robbery, Defendant contends that the Magistrate Judge erred in concluding that armed robbery with a firearm enhancement, in contrast to armed robbery, constitutes a violent felony under the elements clause of the Armed career Criminal Act[1] (the ACCA). [Doc. 20 p. 2-5] Secondly, Defendant argues that New Mexico law does not "necessarily dictate [the] conclusion" reflected in the PFRD that a conviction for voluntary manslaughter requires the defendant to have employed violent physical force. [Doc. 20 p. 5-8] Each of these arguments is addressed in the Court's ensuing discussion.

**The Magistrate Judge Properly Concluded that New Mexico Armed Robbery with a Firearm Enhancement is a "Violent Felony"**

Defendant was convicted in New Mexico of armed robbery (firearm enhancement). [Doc. 19 p. 3] NMSA 1978, Section 30-16-2, which criminalizes robbery, provides that:

> [r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence.

---

[1] As set forth in the PFRD, the "elements clause" of the ACCA, defines a "violent felony" as any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see Johnson v. United States*, 559 U.S. 133, 140 (2010) (hereinafter "*Curtis Johnson*") (holding that, as used in the ACCA's elements clause, the term "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person").

> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

NMSA 1978, Section 31-18-16(A), a sentencing statute, provides in relevant part that:

> When a separate finding of fact by the court or jury shows that a firearm was used in the commission of a noncapital felony, the basic sentence of imprisonment prescribed for the offense . . . shall be increased by one year, and the sentence imposed by this subsection shall be the first year served and shall not be suspended or deferred[.]

N.M. U.J.I. 14-6013, is a special verdict instruction which "is required by Section 31-18-16[.]" In relevant part, it instructs the jury that:

> [i]f you find the defendant guilty of _____, then you must determine if the [crime was] . . . committed [with the use of a firearm] . . . and report your determination. . . . For you to make a finding of "yes," the state must prove to your satisfaction beyond a reasonable doubt that that crime was committed . . . with the use of a firearm[.]

Viewing Section 30-16-2, Section 30-16-2, and U.J.I. 14-6013 together, the Magistrate Judge concluded that "to determine whether armed robbery is a violent felony under the ACCA, the Court must analyze the elements of robbery, plus the additional element of commission of the offense 'while armed with a deadly weapon'" namely, a firearm. [Doc. 19 p. 8-9, 12] In reaching this conclusion, the Magistrate Judge observed that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 476, 494-95 (2000), the Court is required to consider the "use of a firearm" to be an *element* of the crime of armed robbery with a firearm enhancement.

Defendant objects to the Magistrate Judge's conclusion that the firearm enhancement is an element of armed robbery with a firearm enhancement. In

4

support of his objection, Defendant variously characterizes Section 31-18-16(A) as a "state sentencing enhancement" independent of the crime of armed robbery and as a "separate offense with its own separate statute." [Doc. 20 p. 2, 5]  Building on that premise, Defendant argues that using the firearm enhancement which, viewed independently, carries a penalty of only one year, "to transform his New Mexico armed robbery conviction into an ACCA violent felony runs afoul of the plain language and meaning of Section 924(e)(2)(B)." *See* § 924(e)(2)(B)(i) (stating that a violent felony is a "crime punishable by imprisonment for a term exceeding one year").  Defendant's argument, viewed against the backdrop of *Apprendi*, is unsustainable.

At issue in *Apprendi* were two New Jersey statutes—one classifying "the possession of a firearm for an unlawful purpose as a 'second-degree' offense" and another that provided "for an 'extended term' of imprisonment if the trial judge finds, by a preponderance of the evidence, that the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity" (the hate crime statute).  *Apprendi*, 530 U.S. at 468–69 (alterations omitted).  Whereas "possession of a firearm for an unlawful purpose" was classified as a criminal offense, the hate crime statute was found within the "sentencing provisions" of New Jersey's criminal code.  *Id.* at 468, 495.  The defendant (Apprendi) pleaded guilty to two counts of possession of a firearm for an unlawful purpose.  *Id.* at 469-70.  In the plea agreement, the state reserved the right to request that the court impose an "enhanced" sentence on one of the counts pursuant to the

hate crime statute. *Id.* at 470. Apprendi reserved his right to challenge the hate crime sentence enhancement on the ground that it was unconstitutional—an issue that was ultimately resolved in Apprendi's favor by the Supreme Court. *Id.* at 469, 473-74 ("The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt.").

Of significance in regard to Defendant's objection in the present case is the *Apprendi* court's holding that "the mere presence of [the] 'enhancement' in a sentencing statute does not define its character." *Id.* at 496. In other words, the fact that a sentence "enhancer" is the subject of a distinct statute, found within the sentencing provisions of the criminal code, does not mean that that it is "not an essential element of the offense." *Id.* at 495. Because the due process clause of the Fourteenth Amendment requires that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt," the relevant inquiry is whether "the required finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict[.]" *Id.* at 476, 494. Where this inquiry commands a response in the affirmative, the at-issue provision, regardless of whether it is found in a "separate" sentencing statute, constitutes an "element" of the offense. *Id.* at 494.

Like the hate crime statute at issue in *Apprendi*, Section 31-18-16(A) is the subject of a distinct "sentencing" statute. However, as explained in *Apprendi*, this fact is not

6

dispositive of the issue whether it constitutes an "essential element of the offense" to which it is tied. Applying *Apprendi* to the circumstances here, the relevant inquiry is: does the firearm enhancement in Section 31-18-16(A) "expose[] [a] defendant [charged with armed robbery] to a greater punishment than that authorized by the jury's guilty verdict" on the crime of armed robbery? *See Apprendi*, 530 U.S. at 494. The answer is yes. Therefore, armed robbery with a firearm enhancement has *as an element* "the use of a firearm." U.J.I. 14-6013; *see Apprendi*, 530 U.S. at 494. Defendant's argument to the contrary is not persuasive, and his objection to the PFRD on this ground is overruled.

**The Magistrate Judge Properly Concluded that New Mexico Voluntary Manslaughter is a "Violent Felony"**

As accurately reflected in the PFRD, "[t]o be convicted of voluntary manslaughter in New Mexico, a defendant must engage in intentional acts by which he kills a human being, knowing that his acts create a strong probability of death or great bodily harm, on a sudden quarrel or in the heat of passion with sufficient provocation." [Doc. 19 p. 16-17] *See* N.M. U.J.I. 14-221 (stating the essential elements of voluntary manslaughter); N.M. U.J.I. 14-222 (defining sufficient "provocation"); N.M. U.J.I. 14-141 (defining "general criminal intent" which, according to a concomitant use note, must be included as an element in "all nonhomicide crimes requiring criminal intent"); *State v. Reynolds*, 650 P.2d 811, 812-13 (N.M. 1982) (discussing the elements of voluntary manslaughter in the context of determining whether the trial court erred in refusing such an instruction in a trial that concluded in a first degree murder and aggravated burglary conviction). The

Magistrate Judge concluded that "to satisfy these elements, a defendant must necessarily use 'physical force' within the meaning of the ACCA's elements clause." [Doc. 19 p. 17]

Defendant's objection to the Magistrate Judge's conclusion is founded on his contention that voluntary manslaughter may be committed without the intentional use of *Curtis Johnson* violent physical force. [Doc. 20 p. 6-7] Relying on the fact that "physical force" is not expressly mentioned in the voluntary manslaughter statute or the relevant uniform jury instructions, Defendant contends that the "focus" of New Mexico's voluntary manslaughter statute is "the death of the victim," rather than "the force" required to commit the offense. [Doc. 20 p. 6] This distinction is significant, Defendant argues, because our Tenth circuit has held that, in the context of a statute that focuses on the *consequences* of the force—for example one prohibiting the use of "deadly force," the act of poisoning or subjecting a person to a deadly disease could allow for a conviction; whereas, in the context of a statute that focuses on "how the force is generated," "physical force" "*must* refer to the mechanism by which the force is imparted to the person of another." [Doc. 20 p. 6-7] *See United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1193-94 (10th Cir. 2008) (examining whether the nonconsensual administration of a drug should be characterized as "the use of physical force" and recognizing that the "published appellate opinions stating that poisoning involves the use of physical force" are those that "focus on the consequences of poisoning" as opposed to "how the force is generated"). The Magistrate Judge rejected this argument based, in part, upon the Supreme Court's reasoning in *United States v. Castleman*, 134 S.Ct. 1405, 1415 (2014).

In *Castleman*, the Supreme Court considered the prohibition in 18 U.S.C., Section 922(g)(9), against the possession of firearms by anyone convicted of a misdemeanor crime of domestic violence, including one that has as an element "the use . . . of physical force[.]" *Castleman*, 134 S.Ct. at 1409. The petitioner, Castleman, had pleaded guilty in a Tennessee state court to having "intentionally or knowingly caused bodily injury to" the mother of his child. *Id.* Invoking the theory that bodily injury may be caused without the use of physical force as in the example of an intentional poisoning, Castleman argued that "although poison may have 'forceful physical properties' as a matter of organic chemistry, no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink." *Id.* at 1415 (alterations omitted). The Supreme Court rejected Castleman's argument, reasoning that,

> "[t]he 'use of force' in Castleman's example is not the act of 'sprinkling' the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim.

*Id.*

In his objection to the PFRD, Defendant argues that the Magistrate Judge erred in relying on *Castleman* because the *Castleman* court's analysis of "physical force" in the context of domestic violence does not apply in the context of the ACCA's definition of a "violent felony." [Doc. 20 p. 7] Defendant's objection to the PFRD on this ground is unfounded. While the Court agrees with Defendant that the analysis of the phrase "physical force" in *Castleman* does not illuminate

the meaning of "physical force" as that phrase is used in the ACCA,[2] the Magistrate Judge did not reach a contrary conclusion. Rather, the limited reference to *Castleman* in the PFRD was driven by Defendant's contention that voluntary manslaughter does not require the use of "force" because it is possible to kill someone without directly applying force to his body, for example by poisoning him. [Doc. 19 p. 18; see Doc. 1 p. 20] Noting that the *Castleman* decision did "not directly address whether an offense has as an element the actual, attempted, or threatened use of "physical force" within the meaning of the ACCA's elements clause," the Magistrate Judge noted that, in light of *Castleman*, the general notion that "poisoning" does not constitute "physical force" is invalid. [Doc. 19 p. 18-19] Setting aside *Castleman*, which, in the context of Defendant's objection to the PFRD is of no practical significance, the Court would nevertheless reject Defendant's theory that voluntary manslaughter is not a "violent felony."

Defendant cites *Rodriguez-Enriquez* and *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), for the proposition that the Tenth Circuit distinguishes "statutes that require the application or threat of force and those that focus on the resulting injury." And, as noted earlier, he maintains that the prohibition on voluntary manslaughter is focused on "the death of the victim," as

---

[2] Indeed, the *Castleman* court, itself recognized this proposition, stating that "[w]e declined to read the common-law meaning of 'force' into the ACCA's definition of a 'violent felony' because we found it a 'comical misfit with the defined term'"; but "[t]he very reasons we gave for rejecting that meaning in defining a 'violent felony' are reasons to embrace it in defining a 'misdemeanor crime of domestic violence.'" *Castleman*, 134 S.Ct. at 1410.

opposed to "the force" required to commit the offense and, therefore, a person can commit voluntary manslaughter without using violent physical force. [Doc. 20 p. 6-7] On this ground, he urges the Court to conclude that voluntary manslaughter is not a "violent felony" under the ACCA. [Doc. 20 p. 6-7]

In the case of *Rodriguez-Enriquez* our Tenth Circuit examined whether a Colorado conviction triggered a sentencing enhancement under the United States Sentencing Guidelines. *Rodriguez-Enriquez*, 518 F.3d at 1191. The at-issue Guideline defined "a crime of violence" as one which has "as an element . . . the use of physical force." *Id.* at 1192. The defendant had been convicted in Colorado of violating a statute that provided:

> [a] person commits the offense of assault two (drugging a victim) if '[f]or a purpose other than lawful medical or therapeutic treatment, he intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug, substance, or preparation capable of producing the intended harm.'

*Id.* Presented with the government's argument that the courts of Colorado had already determined that, in the context of state sentencing statutes, "assault two" was a "crime of *force*[,]" the *Rodriguez-Enriquez* court considered whether the meaning of "physical force" was distinct from the meaning of force. *Id.* at 1193 (emphasis added). The court reasoned:

> [e]ven if we were to agree that drugging involves the use of *force,* we must still decide what is added by the adjective *physical.* It might relate to the consequences of the force, as in the term *deadly force*, which describes force that can cause death; or it might relate to how the force is generated. The published appellate opinions stating that poisoning involves the use of physical force appear to have selected the first alternative. They focus on

>  the consequences of poisoning and find these consequences every bit as damaging as the consequences of being beaten or shot.

*Id.* at 1193. Ultimately, the *Rodriguez-Enriquez* court "reject[ed] the view that the word *physical* relates to the effect of the force"; instead, the court concluded, that in applying the United States Sentencing Guidelines, "the adjective *physical* must refer to the mechanism by which the force is imparted to the person of another" where, for example, a person is "struck by a fist, a bat, or a projectile[.]" *Id.* at 1194.

The *Rodriguez-Enriquez* court supported its holding by relying, in part, on dictum from *Perez-Vargas,* 414 F.3d 1282 (10th Cir. 2005), an earlier Tenth Circuit case. *See Rodriguez-Enriquez*, 518 F.3d at 1195 ("Apparently focusing on the means employed, we decided [in *Perez-Vargas*] that intentionally exposing someone to hazardous chemicals does not constitute the use of physical force."). In *Perez-Vargas*, the defendant's federal sentence had been enhanced under the United States Sentencing Guidelines based upon a Colorado conviction for third degree assault which the district court had deemed a "crime of violence." 414 F.3d at 1283, 1285 (recognizing that the relevant guideline, USSG, § 2L1.2, defined "a crime of violence" as "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another"). In Colorado, third degree assault consisted of "knowingly or recklessly caus[ing] bodily injury to another person or with criminal negligence [causing] bodily injury to another person by means of a deadly weapon." *Id.* at 1285. Considering the language of the statute, the court noted that

> While it is likely most third degree assaults will involve the use or threatened use of physical force, thus qualifying the crime as a violent one

> under the Guidelines, the language of the statute allows for other possibilities. Indeed, at oral argument, Perez-Vargas's counsel provided several examples of third degree assault that would not use or threaten the use of physical force: recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals. One can imagine a number of other hypotheticals.

*Id.* at 1286. The court reasoned that "there must be a distinction between crimes that potentially involve violent conduct and crimes that merely involve the possibility of resulting harm" that effectively precludes "every sufficiently dangerous activity [from qualifying] as a crime of violence." *Id.* The feature distinguishing these two classes of crimes, the court concluded, is the element of intent. *Id.* Insofar as Colorado's third degree assault statute did not *necessarily* include an element of intent, the court held that it was not a "crime of violence" as that term is used in the United States Sentencing Guidelines. *Id.* at 1286-87.

Returning to Defendant's argument, the Court does not agree with the proposition that the "focus" of New Mexico's voluntary manslaughter statute is a prohibition against the resulting injury (killing a human being) as opposed to the force required to commit the offense. [Doc. 20 p. 6] As an initial matter, the Court is not persuaded by Defendant's attempt to minimize the significance of "general intent" as an element of voluntary manslaughter. [Doc. 20 p. 6] Defendant points to the fact that the general intent instruction, which requires proof that the defendant "acted intentionally when he committed the crime" and which is a mandatory element of all nonhomicide crimes requiring criminal intent, "is used for a broad swath of crimes that would arguably not constitute violent felonies." U.J.I. 14-141. This observation, while objectively true, does

not conflict with the Magistrate Judge's well founded conclusion that voluntary manslaughter requires proof that the defendant engaged in "*intentional acts* by which he kills a human being[.]" [Doc. 19 p. 17] Accordingly, to apply the distinction exemplified by *Perez-Vargas*, and followed in *Rodriguez-Enriquez*, "between crimes that . . . involve violent conduct and crimes that merely involve *the possibility* of resulting harm" voluntary manslaughter, which necessarily includes an element of intent, falls into the former category. *Id.* at 1286.

To conclude otherwise would require the Court either to parse the voluntary manslaughter statute to eliminate the "sufficient provocation" element, or to acquiesce in the absurd notion that "sufficient provocation" allows for the possibility of committing voluntary manslaughter by means other than violent physical force; and neither approach would be appropriate. *See United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017) ("[I]n construing the minimum culpable conduct, such conduct only includes that in which there is a realistic probability, not a theoretical possibility the state statute would apply."); *State v. Davis*, 74 P.3d 1064, 1069 (N.M. 2003) (stating that New Mexico's statutes must not be construed "in a manner contrary to the intent of the Legislature and in a manner that leads to absurd or unreasonable results"); *State v. Dunsmore*, 891 P.2d 572, 574 (N.M. Ct. App. 1995) ("A statute should be construed so that no part of it is rendered surplusage or superfluous."). As illustrated by our Tenth Circuit in *Perez-Vargas*, 414 F.3d at 1286-87, and *Rodriguez-Enriquez,* 518 F.3d at 1193, there are numerous examples of ways in which one could cause harm without using "physical force" (including, among others, poisoning, intentionally placing a barrier in front of a

car causing an accident, and intentionally exposing someone to hazardous chemicals, and failing to offer medical assistance).  However, it is unreasonable to suggest that "an ordinary person of average disposition," even "upon a sudden quarrel or in the heat of passion," would not have "cooled off before acting" to effect a killing of a human being by means of these (or comparable) acts or omissions.  *See* Section 30-2-3(A) ("Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion."); U.J.I. 14-221 (stating that "sufficient provocation" is an element of voluntary manslaughter);  U.J.I. 14-222 (defining sufficient provocation, which "must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition"; but "'provocation' is not sufficient if an ordinary person would have cooled off before acting").  Accordingly, the Court is not persuaded by Defendant's contention that voluntary manslaughter may be committed without the intentional use of *Curtis Johnson* violent physical force.  His objection to the PFRD on this ground is overruled.

**CONCLUSION**

For the reasons stated herein, the Court concludes that the Magistrate Judge properly concluded that New Mexico armed robbery with a firearm enhancement and New Mexico voluntary manslaughter each constitute a "violent felony" under the ACCA.  Accordingly, *Defendant's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition* shall be overruled.

**IT IS THEREFORE ORDERED that:**

1. *Defendant's Objections to Magistrate Judge's Proposed Findings and Recommended Disposition* [Doc. 20] are **OVERRULED**;

2. The Magistrate Judge's Proposed Findings and Recommended Disposition [Doc. 19] is **ADOPTED** as an order of the Court;

3. Vicente Montes' Emergency Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**SO ORDERED** this 29th day of September, 2017 in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**